NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

NICHOLAS KRAKANA, *Petitioner/Appellant*,

*v.*

SUSANNA HADDEN, *Respondent/Appellee*.

No. 1 CA-CV 23-0222 FC
FILED 12-26-2023

Appeal from the Superior Court in Maricopa County
No. FC2016-050246
No. FC2017-003246
The Honorable James Knapp, Judge

**AFFIRMED**

COUNSEL

Nicholas Krakana, Scottsdale
*Petitioner/Appellant*

Susanna Hadden, Scottsdale
*Respondent/Appellee*

---

**MEMORANDUM DECISION**

Judge Paul J. McMurdie delivered the Court's decision, in which Presiding Judge D. Steven Williams and Judge Samuel A. Thumma joined.

---

**M c M U R D I E**, Judge:

**¶1**        Nicholas Krakana ("Father") appeals the superior court's January 2023 legal decision-making and parenting-time orders and the February 2023 child support order. He also appeals the attorney's fees granted in the January 2023 order and requests that this decision be sealed. We affirm the superior court's orders and decline to file this decision under seal.

## FACTS AND PROCEDURAL BACKGROUND

**¶2**        Susanna Hadden ("Mother") and Father are the parents of two minor children, born in 2007 ("Son") and 2009 ("Daughter"). The parties were never married. In April 2016, Father petitioned to establish legal decision-making and parenting time. The court granted Mother sole legal decision-making authority. And it granted Father no parenting time because of a protective order against him naming the children as protected parties. Later, the court placed the case on the inactive calendar so a dependency petition could be filed. When the parties failed to move to set a trial, the court dismissed the case.

**¶3**        In January 2017, Father re-petitioned to establish paternity, legal decision-making, parenting time, and child support. The court held a trial on the petition in August 2017. In its judgment ("2017 order"), the court ordered joint legal decision-making authority and parenting time and that Father pay Mother $434 monthly in child support. The court also directed the parties to engage in intensive counseling. It agreed with a court's previous ruling that "the parents continue to fixate on vindicating themselves regardless of the suffering their children will experience in the process." (Emphasis omitted.)

**¶4**        Father moved for a new trial or an amended judgment. The court denied the motion, and Father appealed. This court affirmed the 2017

order in *Krakana v. Haass*, 1 CA-CV 17-0747, 2018 WL 5019473 (Ariz. App. Oct. 11, 2018) (mem. decision).

¶5          Within three years of the August 2017 order, Father petitioned to modify the order four times. The superior court denied all four petitions.

¶6          In October 2021, the superior court granted a protective order against Father because of an incident involving Father and the minor children. In the petition, Mother alleged that Father believed Daughter reported to the police that Father had shoplifted. When Father learned of Daughter's remarks, he went to the children's school and withdrew the children from their classes. He brought them to a room and accused Daughter of "try[ing] to get [him] in trouble with the police" and of being "sick," "evil," "malicious," and "sociopath[ic]." The petition alleged that Father scolded Daughter,

> If you do this to anybody else in your life that you – that you get their trust and you gain their trust and you turn on them like that – don't be surprised if they lash out at you. 'Kay? Especially if it's a guy and they get physical – I wouldn't be surprised because if you were in a relationship with somebody and you turned on somebody like this – they would knock your head off your shoulders.

Father requested a hearing on the petition, which the superior court held. After hearing testimony from both parties, the court affirmed the protective order. And the court noted that Father's behavior was "reprehensible, abusive, threatening, and intimidating."

¶7          Soon after, Mother petitioned to modify legal decision-making authority, parenting time, and child support. In the petition, Mother alleged that Father was refusing to participate in the legal decision-making process, engaging in child abuse and parental alienation, and not fully exercising his parenting time. She requested sole legal decision-making authority, designation as the primary residential parent with Father to have limited, supervised parenting time, and a modified child support award.

¶8          The superior court held an evidentiary hearing on Mother's petition. In January 2023, the court entered its judgment ("January 2023 order"). After analyzing the best interest factors under A.R.S. §§ 25-403(A), 25-403.01(B), and 25-403.03, the court awarded Mother sole legal decision-making and designated her as the children's primary residential parent. It awarded Father parenting time with Son every other weekend

and with Daughter every other Saturday between 10:00 a.m. and 6:00 p.m. The court designated the parenting plan for Daughter as an interim plan that the court could amend after Father and Daughter completed the Court Ordered Behavioral Interventionist ("interventionist") process. Because Father declined to participate in the interventionist process, the court later ordered the interim parenting plan to remain in place. Father moved for reconsideration of this order, but the court denied it.

¶9  The court found that Father had "failed to respond to inquiries from Mother on issues that are important to the children's health, well-being, and happiness" and exercised very little parenting time in 2019, 2020, and 2021. It emphasized that the protective order against Father was affirmed after a contested hearing and that Father expressed no regret about the events leading to it. It also found that Father did not exercise supervised parenting time after the protective order expired in November 2022. For these reasons and others, the court found that Father failed to rebut the presumption that an award of sole or joint decision-making authority to the parent who committed the act of domestic violence conflicted with the child's best interests. *See* A.R.S. § 25-403.03(D), (E). Finally, the court granted Mother's request for attorney's fees after finding that Father had "considerably more resources available" and "acted unreasonably in the litigation."

¶10  In February 2023, the superior court ordered Father to pay Mother $1,165 monthly in child support ("February 2023 order"). It acknowledged its January 2023 finding that the parties presented "insufficient evidence to make proper findings about Mother's and Father's income." Still, it stated it must determine child support when modifying parenting time.

¶11  Father moved to reconsider the court's January 2023 order and for a new trial or an amended judgment on the February 2023 order. The court denied both motions. Father appealed both orders, and we have jurisdiction under A.R.S. §§ 12-120.21(A)(1), 12-2101(A)(1), and 12-2101(A)(2).

## DISCUSSION

**A. The Superior Court Did Not Abuse Its Discretion by Granting Mother Sole Legal Decision-Making Authority.**

¶12  We review an award of legal decision-making and parenting time for an abuse of discretion. *Olesen v. Daniel*, 251 Ariz. 25, 29, ¶ 14 (App.

4

2021); *DeLuna v. Petitto*, 247 Ariz. 420, 423, ¶ 9 (App. 2019). A.R.S. § 25-403.03(D) provides:

> If the court determines that a parent who is seeking sole or joint legal decision-making has committed an act of domestic violence against the other parent, there is a rebuttable presumption that an award of sole or joint legal decision-making to the parent who committed the act of domestic violence is contrary to the child's best interests. *This presumption does not apply if both parents have committed an act of domestic violence.*

(Emphasis added.) Father argues that Mother also engaged in domestic violence, and so the superior court erred by applying A.R.S. § 25-403.03(D)'s presumption. To support his argument, Father points to the 2016 protective order entered against Mother and the superior court's finding in the 2017 parenting order that both parties engaged in domestic violence.

**¶13** But the 2017 finding is not pertinent to Mother's 2021 modification petition. When considering a modification petition, the court considers whether there has been "a material change of the circumstances affecting the child's welfare since the last court order." *Backstrand v. Backstrand*, 250 Ariz. 339, 341, ¶ 1 (App. 2020). Thus, the January 2023 order at issue contemplates the material changes *after* the 2017 order and the current status of the children and parties. *See id.* At the 2022 evidentiary hearing, Father did not present testimony on new domestic violence allegations against Mother. Rather, the relevant material change after the 2017 order is the 2021 protective order against Father and the corresponding contested hearing when the court found Father committed domestic violence. Based on this incident and finding, Mother alleged in her modification petition that Father committed domestic violence. The January 2023 order thus correctly found that "the presumption applies because [Father] committed at least one act of domestic violence against [Mother], and [Mother] has not committed domestic violence." *See* A.R.S. § 25-403.03(D).

**¶14** Father also argues that the court erred by precluding Dr. Phipps-Yonas's affidavit and curriculum vitae, which he asserts would have undermined the protective order against him. The court precluded Dr. Phipps-Yonas's expert testimony before the evidentiary hearing. Then, Father tried to introduce Dr. Phipps-Yonas's affidavit and CV at the hearing, but the court declined to admit the exhibits.

**¶15**        Without an abuse of discretion, we will not second-guess the superior court's ruling on the admissibility or relevance of evidence. *State v. Spreitz*, 190 Ariz. 129, 146 (1997). As the superior court detailed in its order denying Father's motion to reconsider the evidentiary exclusion, the "testimony by that proposed expert infringes on the finder of fact . . . [i]t is for the Court to determine whether or not there has been abuse or neglect." Father does not provide legal authority to support his contention that the evidence must be admitted. *See* ARCAP 13(a)(7) (An argument must contain "supporting reasons for each contention . . . with citations of legal authorities."). And more importantly, issue preclusion applies to bar relitigation over a prior court finding of domestic violence. *See Olesen*, 251 Ariz. at 30, ¶ 20.

**¶16**        Lastly, Father argues that the superior court erred by granting Mother sole legal decision-making when the parties' children are doing poorly in school. Father specifically objects to the superior court "skip[ping] over that issue in its ruling[.]" But in conducting the best interest analysis under A.R.S. § 25-403, the superior court documented Father's "concern that [the children] aren't doing well in school currently[.]" At the same time, the superior court also found, among other things, that Father has exercised very little parenting time in the last few years, withheld permission for Daughter's counseling, and engaged in domestic violence. Because the court made "specific findings on the record about all relevant factors and the reasons for which the decision is in the best interests of the child[ren,]" and the record supports those findings, it did not abuse its discretion by granting Mother sole legal decision-making authority. *See* A.R.S. § 25-403(B); *cf. Hart v. Hart*, 220 Ariz. 183, 186, ¶ 9 (App. 2009).

**B.        The Superior Court Did Not Abuse Its Discretion by Granting Mother and Father Unequal Parenting Time.**

**¶17**        Father argues that the January 2023 order improperly restricted his parenting time because he cannot pay for the interventionist process that the court ordered before his parenting time with Daughter could increase. Father contends he "was crystal clear that the reason he could not proceed [with the interventionist] was purely financial."

**¶18**        The superior court "may order parties to engage in behavioral or mental health services, including counseling and therapeutic interventions," but it "must determine on the record whether the parties have the ability to pay for services." Ariz. R. Fam. Law P. 95(a), (b). On appeal, "[w]e will accept the court's factual findings as true unless they are clearly erroneous." *Gish v. Greyson*, 253 Ariz. 437, 444, ¶ 31 (App. 2022).

**¶19** Here, the superior court determined that "Father did not provide accurate information about his income and expenses," but stated, "the [c]ourt nevertheless finds based on the testimony on 12/12/2022 regarding Father's available resources that Father can afford to pay for a[n] [interventionist]." On appeal, Father does not cite to record evidence that the court's finding of his ability to pay was "clearly erroneous." *See Gish*, 253 Ariz. at 444, ¶ 31. Thus, he fails to show that the court abused its discretion when it ordered his parenting time to be limited until the interventionist process was completed.

**¶20** Father also argues that the order hurts the parent-child relationship and thus improperly infringes on his parental rights. He misreads the January 2023 Order to guarantee "substantial, frequent, meaningful and continuing contact" with both children and argues that the parenting time order contradicts this guarantee. But the court only ensured this contact with Son. As for Daughter, the court specifically found:

> [P]arenting time that ensures [Father] will have substantial, frequent, meaningful, and continuing contact with [Daughter] would endanger the child's physical, mental, moral or emotional health because Father and [Daughter] have been estranged since the 10/18/2021 incident, and [Daughter] currently states that she wants no parenting time with Father. The Court finds, however, that it would not be in the best interest of [Daughter] to cut Father out of her life. It is in the best interest of [Daughter] and Father to work on their relationship through therapy.

Because the superior court made specific best-interest findings about parenting time supported by the record, and Father does not contradict those findings, it did not err. *See* A.R.S. § 25-403(B); *see also Hart*, 220 Ariz. at 186, ¶ 9.

**C.    The Superior Court Did Not Abuse Its Discretion by Modifying the Child Support Order.**

**¶21** "The decision to modify an award of child support rests within the sound discretion of the trial court and, absent an abuse of that discretion, will not be disturbed on appeal." *Nia v. Nia*, 242 Ariz. 419, 422, ¶ 7 (App. 2017) (citing *Little v. Little*, 193 Ariz. 518, 520, ¶ 5 (1999)).

**¶22** Father argues that no change in circumstances warranted the February 2023 order's new child support amount. Mother responds that the changes in the children's ages and parenting time support the new amount.

We agree with Mother. Because the superior court granted Mother's petition to modify parenting time, "it was required to address child support." *Heidbreder v. Heidbreder*, 230 Ariz. 377, 379-80, ¶ 7 (App. 2012). And when it did, there was an increase in the children's ages and in Mothers' parenting time from the 2017 child support order. Those changes are reflected in the February 2023 order.

**¶23** Father contends the court erred by not considering Mother's home value when calculating her income. He states, "[s]ince the trial court is using Appellants home as a gage for child support obligations based on rental income, it would be prudent for the trial court to take into consideration Appellee's housing situation." But the child support guidelines provide that income may include various monetary sources, like recurring gifts. *See* A.R.S. § 25-320 app. ("Guidelines") § II.A.1.b. Father's argument fails to acknowledge that the superior court considered his theoretical rent as income because he lives in a rent-free house, a recurring gift from his mother. But there was record evidence that Mother *pays* rent, so it would have been error to attribute her housing as income. The superior court based Mother's income on her reported commissions and bonuses and attributed her a minimum-wage salary. The record supports these figures.

**¶24** The superior court did not abuse its discretion when calculating the parties' incomes and ordering Father to pay $1,165 monthly in child support.

**D.     The Superior Court Did Not Abuse Its Discretion by Granting Mother Attorney's Fees.**

**¶25** After the superior court considers the parties' financial resources and the reasonableness of their positions, it has the discretion to award attorney's fees. *See* A.R.S. § 25-324(A); *Ferrill v. Ferrill*, 253 Ariz. 393, 399, ¶ 25 (App. 2022). We review an attorney's fees award under A.R.S. § 25-324 for an abuse of discretion and reverse only when clearly erroneous. *Hefner v. Hefner*, 248 Ariz. 54, 57, ¶ 6 (App. 2019) (cleaned up).

**¶26** Father argues the superior court abused its discretion when it awarded Mother attorney's fees in the January 2023 order. The court granted this award in part because it found that Father "acted unreasonably in the litigation" by seeking relocation of the children to California. But Father asserts he acted in good faith. He argues on appeal that relocation would benefit the children because "[l]iving in Newport Beach, CA in a single-family home attending Corona del Mar High School in itself is a

dream for any child or adult." But Father "provided no [trial] evidence to explain, e.g., how a relocation would improve any of their lives, or how it would allow parenting time for Mother."

**¶27**        The superior court also based its award of attorney's fees on Father's greater financial resources, spiteful litigation, and untrustworthy testimony. And Father does not dispute these findings. Thus, Father has failed to show the court abused its discretion by awarding Mother her attorney's fees.

**E.        Father Has Shown No Grounds to Seal this Decision.**

**¶28**        Father requests that this court seal its decision for his children's well-being. Mother "does not object to the sealing of the documents, but questions the motive." "With very few exceptions, all decisions this Court issues are a matter of public record." Court of Appeals, Division One, Policies, *available at* https://www.azcourts.gov/coa1/Filer-Information/Policies. Because Father failed to articulate an applicable exception to the court's policy, we decline to file this case under seal.

**F.        We Deny Mother's Request for Attorney's Fees on Appeal.**

**¶29**        Mother argues Father unreasonably contests the superior court's rulings and requests attorney's fees under A.R.S. §§ 12-349, 25-324, and ARCAP 21. Because counsel does not represent Mother, we deny her fee request. As the prevailing party, she is entitled to costs upon compliance with ARCAP 21.

**CONCLUSION**

**¶30**        We affirm.



AMY M. WOOD • Clerk of the Court
FILED:     TM